IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRENT D. YOUNG, et al., | : | |
| Plaintiffs, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| PFIZER INC., et al., | : | No. 06-1308 |
| Defendants. | : | |

MEMORANDUM

**Schiller, J.** April 18, 2016

    Brent Young and his ex-wife Jodie Young sued Pfizer and several divisions of Warner-Lambert Company in 2006, alleging that Defendants illegally marketed a drug called Neurontin for uses that had not been approved by the Food and Drug Administration ("FDA"), including treatment of neuropathic pain. Brent Young took Neurontin for this purpose, and he alleges that it caused him to experience suicidal ideations and ultimately to attempt suicide. The case was part of Multidistrict Litigation ("MDL") in the District of Massachusetts, but was remanded to this Court following pretrial proceedings. All Defendants now move for summary judgment. For the reasons that follow, the Court grants summary judgment.

**I.     BACKGROUND**

    Brent Young is a trained electronic technician from Lafayette, Louisiana. (Pl.'s Resp. Opp'n Mot. Summ. J., Ex. A [Feb. 7, 2005 Medical Record].) He reinjured his left ankle in 2003 and underwent reconstructive surgery in February 2004, after which he developed Reflex Sympathetic Dystrophy ("RSD"), a chronic neuropathic pain syndrome. (*Id.*) In June 2004, he checked himself into a hospital complaining of depression and seeking to withdraw from the

opioid painkillers he had been taking since his initial ankle injury in 1998. (Defs.' Mot. Summ. J., Ex. C [June 19, 2004 Medical Record].) In the hospital he met with Dr. Michael Jennings, a pain medicine specialist who continued to treat Young after his release from the hospital. (Defs.' Mot. Summ. J., Ex. B [Jennings Dep.] at 10, 37, 40.) Jennings prescribed Neurontin, and referred Young to a psychiatrist. (Defs.' Statement of Undisputed Facts ¶¶ 7, 11.) Young states that as Jennings increased his dosage of Neurontin, his wife noticed that he became "intolerable." (Pl.'s Resp. Opp'n Mot. Summ. J.)

Young also underwent a series of lumbar sympathetic blocks intended to mitigate his chronic pain. (Feb. 7, 2005 Medical Record.) The last sympathetic block was performed on February 3, 2005, and Young perceived that it was less effective than the previous procedures. (Pl.'s Resp. Opp'n Mot. Summ. J.) The next day, he attempted to commit suicide. (Feb. 7, 2005 Medical Record.) Young subsequently stopped taking Neurontin and states his suicidal ideations ceased. (Pl.'s Resp. Opp'n Mot. Summ. J.) However, Dr. Jennings averred that he continues to frequently prescribe Neurontin to patients with nerve pain, and none of these patients has ever reported suicidal ideations to him. (Jennings Dep. at 24.) Young had separated from his wife, Jodie, shortly before the suicide attempt, and they have since divorced. (*Id.*; Feb. 7, 2005 Medical Record.) None of the parties currently involved in this proceeding can now locate Mrs. Young. (Defs.' Mot. Summ. J. at 6 n.3.)

The Youngs initially filed their Complaint in 2006. According to the Complaint, during the relevant time period the FDA had only approved Neurontin for the treatment of epilepsy. (Compl. ¶¶ 114–15.) Defendants allegedly violated the Food, Drug, and Cosmetic Act ("FDCA") by marketing Neurontin for various "off-label" uses, including treatment of peripheral

2

neuropathy, RSD, and complex regional pain syndrome. (*Id.* ¶¶ 108–119.) Young was prescribed Neurontin to treat his RSD, but the medication was not effective. (*Id.* ¶ 132.) Rather, he alleges, it harmed him by leading to his attempted suicide. (*Id.* ¶ 133.) The Complaint includes the following causes of action: (1) negligence; (2) breach of express and implied warranty; (3) strict products liability for failure-to-warn; (4) fraud; (5) unfair trade practices; and (6) loss of consortium, on behalf of Jodie Young.

The case was transferred to the District of Massachusetts for pretrial proceedings as part of a Neurontin MDL. The MDL resulted in a large settlement with a class of third-party payors who had covered the cost of Neurontin, which Defendants Pfizer and Warner-Lambert allegedly marketed for off-label uses. *In re Neurontin Mktg. & Sales Practice Litig.*, 58 F. Supp. 3d 167, 169 (D. Mass. 2014). However, in 2013, the remaining individual products liability actions, including Young's, were remanded. *See In re Neurontin Mktg. & Sales Practice Litig.*, Civ. A. No. 04-10981, 2013 WL 2384317, at *3 (D. Mass. May 29, 2013). After remand, Young's attorneys withdrew. Young was unable to obtain new counsel and now proceeds pro se.

## II.     STANDARD OF REVIEW

Summary judgment is appropriate when the admissible evidence fails to demonstrate a genuine dispute of material fact and when the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). When the movant does not bear the burden of persuasion at trial, it may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry its burden of persuasion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Thereafter, the nonmoving

party demonstrates a genuine issue of material fact if it provides evidence sufficient to allow a reasonable finder of fact to find in its favor at trial. *Anderson*, 477 U.S. at 248. Where the moving party bears the burden of persuasion at trial, it must establish the absence of a genuine issue of material fact. *Nat'l State Bank v. Fed. Reserve Bank of N.Y.*, 679 F.2d 1579, 1582 (3d Cir. 1992).

In reviewing the record, a court "must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Prowel v. Wise Bus. Forms*, 32 F.3d 768, 777 (3d Cir. 2009). The court may not, however, make credibility determinations or weigh the evidence in considering motions for summary judgment. *See Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000); *see also Goodman v. Pa. Tpk. Comm'n*, 293 F.3d 655, 665 (3d Cir. 2002).

**III.    DISCUSSION**

Although this case was filed in Pennsylvania, all the relevant events occurred in Louisiana, where Young resides. This Court, when exercising its diversity jurisdiction, applies Pennsylvania's choice-of-law rules. *Chin v. Chrysler LLC*, 538 F.3d 272, 278 (3d Cir. 2008). Pennsylvania law employs a three-step process to determine which state's law applies: (1) determine whether a real conflict exists; (2) examine the policies underlying each approach in order to classify the conflict as true, false, or unprovided for; and (3) where a true conflict exists, weigh the contacts each jurisdiction has with the dispute. *Knipe v. SmithKline Beecham*, 583 F. Supp. 2d 602, 613–14 (E.D. Pa. 2008).

Here, the Court need not proceed beyond the first step. The primary issue in this case is causation: Defendants argue that Young has not proffered expert testimony necessary to prove that ingesting Neurontin caused him harm. (Defs.' Mot. Summ. J. at 6.) All Young's claims require proof of causation under Pennsylvania law. *See Green v. Pa. Hosp.*, 123 A.3d 310, 316 (Pa. 2015) (negligence); *Price v. Chevrolet Motor Div. of Gen. Motors Corp.*, 765 A.2d 800, 809 (Pa. Super. Ct. 2000) (breach of warranty); *Wolfe v. McNeil-PPC, Inc.*, 773 F. Supp. 2d 561, 568–69 (E.D. Pa. 2011) (strict liability failure-to-warn); *Viguers v. Philip Morris USA, Inc.*, 837 A.2d 534, 540 (Pa. Super. Ct. 2003) (fraud); *Am. Fed'n of State, Cty., & Mun. Emps., Dist. Council 47 Health & Welfare Fund v. Ortho-McNeil-Janssen Pharms., Inc.*, 857 F. Supp. 2d 510, 514 (E.D. Pa. 2012) (claims for violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law); *Nationwide Mut. Ins. Co. v. Cosenza*, 258 F.3d 197, 206 (3d Cir. 2001) (loss of consortium claim is dependent on the injured spouse's right to recover).

Under Louisiana Law, the Louisiana Products Liability Act (LPLA) provides the exclusive remedy for products liability suits and precludes other negligence, strict liability, breach of warranty, and intentional tort claims. *Stahl v. Novartis Pharm. Corp.*, 283 F. 3d 254, 261–62 (5th Cir. 2002). LPLA claims require proof of causation, as do claims under the Louisiana Unfair Trade Practices and Consumer Protection Law. *NOLA 180 v. Treasure Chest Casino, LLC*, 91 So. 3d 446, 450 (5th Cir. 2012); *id.* at 261.

Thus, Young's claims require proof of causation under both Pennsylvania and Louisiana law. Moreover, both states require expert testimony when medical causation is at issue. *Demouchet v. Gen. Nutrition Corp.*, Civ. A. No. 11-1961, 2014 WL 1652518, at *4 (W.D. La. Apr. 24, 2014); *Williams v. Wyeth*, Civ. A. No. 10-0744, 2013 WL 3761107, at *2 (E.D. Pa. July

5

18, 2013). Therefore, no conflict exists and Pennsylvania law applies. *Knipe*, 583 F. Supp. 2d at 613.

Young cannot survive summary judgment because he fails to put forward any evidence, short of his own personal observations, that would allow a jury to conclude that Neurontin caused him to attempt suicide. *See Celotex Corp.*, 477 U.S. at 322. In this situation, where the complexities of a drug's impact on the human body are at issue, expert testimony is necessary to prove causation. *See Hamil v. Bashline*, 392 A.2d 1280, 1285 (Pa. 1978). While the Court is sympathetic to Young's pro se status and construes his pleadings liberally, it cannot allow this case to proceed without the necessary evidence to support an essential element of his claims. *See Shabazz v. Odum*, 591 F. Supp. 1513, 1515 (M.D. Pa. 1984).

## IV.   CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is granted. An Order consistent with this Memorandum will be docketed separately.